In re WAL–MART WAGE AND HOUR
EMPLOYMENT PRACTICES
Litigation.

**And All Related Cases.**

**No. 2:06–CV–00225–PMP–PAL.**

United States District Court,
D. Nevada.

May 23, 2007.

Carolyn Burton, The Law Offices of Carolyn Beasley Burton, Walnut Creek, CA, Dirk A. Ravenholt, Las Vegas, NV, Robert J. Bonsignore, Nathan R. Long, Paul C. Echohawk, Echohawk Law Offices, Pocatello, ID, Carol P. Laplant, Mark C.

Choate, Choate Law Firm, Juneau, AK, Arthur Y. Park, Don V. Huynh, John C. McLaren, Laurent J. Remillard, Jr., Park Park Yu & Remillard, Wayne D. Parsons, Honolulu, HI, Brendan V. Johnson, Matthew T. Tobin, Johnson Heidepriem Miner Marlow & Janklow, Sioux Falls, SD, Gary S. Nitsche, Wilmington, DE, Ivy L. Frignoca, Samuel K. Rudman, Lambert Coffin, Portland, ME, Cynthia K. Smith, Smith Jewell, Missoula, MT, Royce Deryl Edwards, Jr., R. Deryl Edwards, Jr., Joplin, MO, Christopher P. Welsh, James R. Welsh, Welsh Welsh Law Firm, Omaha, NE, Glen W. Neeley, Burdett Neeley & Davis, PLLC, Ogden, UT, Bradley D. Bonner, Laurence William Stinson, Bonner Stinson, Powell, WY, Fred Schultz, Greene & Schultz, Bloomington, IN, Richard P. Batesky, Jr., Indianapolis, IN, Daniel D. Ambrose, Ambrose, Ambrose, Walled Lake, MI, Craig O. Asbill, Charles G. Monnett, III & Associates, Charlotte, NC, Maria B. Glorioso, Vincent J. Glorioso, III, Vincent J. Glorioso, Jr., Glorioso Law Firm, New Orleans, LA, Gregory F. Greiner, Greiner Law Office P.C., Des Moines, IA, John Jay Rausch, Rausch Law Firm, Waterloo, IA, J. Thomas Henretta, Henretta Law Offices, Akron, OH, Mike J. Miller, Stacey Elizabeth Tjon, Solberg Stewart Miller & Tjon Ltd., Fargo, ND, Franklin D. Azar, Rodney P. Bridgers, Tonya L. Melnichenko, Franklin D. Azar & Associates, P.C., Aurora, CO, Gerald L. Bader, Jr., Bader & Associates, LLC, Denver, CO, Pamela R. Mullis, Mullis Law Firm, J. Marvin Mullis, Columbia, SC, Mark A. Tate, Carter & Tate, P.C., Savannah, GA, Donald S. Goldbloom, Grantsville, MD, Troy Giatras, Charleston, WV, Jeremy Cave, Aurora, CO, Frederick P. Furth, Jessica L. Grant, Michael P. Lehmann, Furth Lehmann & Grant, LLP, San Francisco, CA, Jill P. Telfer, Law Offices of Jill P. Telfer, Sacramento, CA, for Plaintiffs.

Barbara A. Petrus, Carolyn K. Gugelyk, Edmund K. Saffery, Goodsill Anderson Quinn & Stifel, LLP, Honolulu, HI, Barry M. Klayman, Wolf Block Schorr & Solis–Cohen LLP, Wilmington, DE, Brian W. Boschee, James E. Whitmire, III, Santoro, Driggs, Walch, Kearney, Johnston & Thompson, Las Vegas, NV, Brian C. Buescher, Marcia A. Washkuhn, Thomas J. Kenny, Kutak Rock Law Firm, Christopher R. Hedican, Baird Holm, Omaha, NE, Brian Duffy, Naomi Beer, Greenberg Traurig, Denver, CO, Daniel J. Mitchell, Bernstein Shur Sawyer & Nelson, Portland, ME, David L. Young, Rudy A. Englund, Mary K. Schug, Lane Powell, Michael J. Killeen, Michael Reiss, Davis Wright Tremaine LLP, Seattle, WA, Jim Odell Stuckey, II, Littler Mendelson, P.C., Colombia, SC, Kathleen W. Toth, Manning Curtis Bradshaw & Bednar LLC, Salt Lake City, UT, Kurt D. Williams, Berkowitz Oliver Williams Shaw & Eisenbrandt LLP, Kansas City, MO, Lawrence Joseph Sorohan, II, Fisher & Phillips, LLP, New Orleans, LA, Lee Bruner, Poore Roth & Robinson, Butte, MT, Melissa Carol Hinton, Davenport Evans Hurwitz & Smith, Sioux Falls, SD, Michael Drury, Greenberg Traurig, LLP, Costa Mesa, CA, Robert K. McCalla, Fisher & Phillips, LLC, New Orleans, LA, Roberto Antonio Lange, Susan Brunick Simons, Davenport Evans Hurwitz & Smith, Sioux Falls, SD, Sammi V. Anderson, Manning Curtis Bradshaw & Bednar LLC, Salt Lake City, UT, Thomas A. Nicholas, III, Robert Carl Jarosh, Lindsay Ann Eckes, Gary R. Scott, Hirst & Applegate, Cheyenne, WY, William A. Earnhart, Lane Powell, Anchorage, AK, Ellen E. Boshkoff, Jeffrey S. Beck, Baker and Daniels, LLP, Indianapolis, IN, Eric J. Pelton, Kienbaum Opperwall Hardy & Pelton, P.L.C., Birmingham, MI, Bradd N. Siegel, Porter Wright Morris & Arthur, Columbus, OH, for Defendants.

*ORDER*

PRO, District Judge.

Presently before the Court is Defendants' Motion to Dismiss or Motion for Judgment on the Pleadings With Respect to Plaintiffs' Claims for Conversion, Unjust Enrichment, Statutory Wages, and Memorandum of Law in Support Thereof (Doc. # 57), filed on June 30, 2006, with supplements (Doc. # 63, # 64). On August 17, 2006, Plaintiffs filed an Opposition to Defendants' Motion to Dismiss or Motion for Judgment on the Pleadings With Respect to Plaintiffs' Claims for Conversion, Unjust Enrichment and Statutory Wages (Doc. # 66). Defendants filed a Reply (Doc. # 74) on September 11, 2006. This Court held a hearing on the motion on April 30, 2007.

## I. BACKGROUND

This multi-district litigation arises out of allegations that Defendants Wal–Mart Stores, Inc., Wal–Mart Associates, Inc., Sam's West, Inc., and Sam's East, Inc. systematically failed to pay their hourly employees for all time worked, including overtime hours. Plaintiffs brought suit in various districts and the actions have been transferred to this Court for coordinated and consolidated pre-trial proceedings. Generally, Plaintiffs allege Defendants altered employees' time records by "shaving" time off employees' hours worked through several techniques, including altering the employees' time records to make it appear the employees' workdays ended one minute after their meal period concluded, deleting overtime hours the employees worked in excess of forty hours per work week, deleting employee time clock punches so employees would not be paid for hours worked, altering employee records to make it appear they took breaks or meal periods when they did not, and failing to pay employees for all report-

ed time. Plaintiffs bring a variety of claims, including breach of contract, breach of the covenant of good faith and fair dealing, conversion, unjust enrichment, and violation of state statutory wage, hour, and record keeping provisions.

Defendants now move to dismiss claims for conversion, unjust enrichment, and statutory wage, hour, and record keeping violations in eleven of the transferred cases.[1] Defendants argue that ten of the eleven relevant jurisdictions do not recognize a cause of action for conversion of money and Plaintiffs have no possessory interest in Defendants' payroll records to support a conversion claim.[2] Defendants argue Plaintiffs fail to state a claim for unjust enrichment because that is an equitable remedy available only when no adequate remedy at law exists, and Plaintiffs have adequate remedies at law to recover the allegedly unpaid wages. Finally, Defendants move to dismiss Plaintiffs' claims based on certain state statutory wage, hour, and record keeping provisions.

Plaintiffs respond that Defendants converted Plaintiffs' property interest in compensation for hours worked as reflected in electronic payroll records when Defendants intentionally altered those records by deleting employees' hours worked. Plaintiffs argue this states a conversion claim in the relevant jurisdictions. Plaintiffs also argue their unjust enrichment claims may lie because they do not have an adequate remedy at law. Plaintiffs argue only disgorgement will prevent Defendants from retaining profits they generated through pilfering their employees' time and lowering their payroll expenses. Finally, Plaintiffs assert they adequately state claims under the various state wage, hour, and record keeping statutes.

## II. LEGAL STANDARD

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir.1994). There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997) (citation omitted). The issue is not whether the plaintiff ultimately will prevail, but whether he may

---

1. Defendants move to dismiss claims in *Jackson (Dora) v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00229; *McFarlin v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00228; *Luce v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00232; *Hall (Nancy) v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–01099; *Jackson (Reginald), et al. v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00231; *Curless v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00440; *Poha, et al. v. Wal-mart Stores, Inc., et al.*, 2:06–CV–00230; *Stafford v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00438; *Woods v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00436; *Cole, et al. v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00437; and *Williams (Norma Jean) v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00439.

2. Defendants concede South Dakota may recognize a conversion claim for money and therefore do not seek to dismiss the conversion claim in *Luce v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00232. (Defs.' Mot. to Dismiss or Mot. for J. On the Pleadings with Respect to Pls.' Claims for Conversion, Unjust Enrichment, Statutory Wages, & Mem. of Law in Supp. Thereof. [Doc. # 57] at 5–6 n. 4; Defs.' Reply in Supp. of Mot. to Dismiss or Mot. for J. on the Pleadings With Respect to Pls.' Claims for Conversion, Unjust Enrichment, & Statutory Wages [Doc. # 74] at 4 n. 4.)

offer evidence in support of his claims. *See id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Consequently, the Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Hicks v. Small,* 69 F.3d 967, 969 (9th Cir.1995).

The parties agree that in each of these cases, the substantive law of the state where the transferor court sits applies. *See In re Nucorp Energy Sec. Litig.,* 772 F.2d 1486, 1492 (9th Cir.1985) (where the central question is a substantive question of state law, the transferee court in multi-district litigation applies the law of the state in which the transferor court sits). Where a state has not addressed a particular issue, a federal court must use its best judgment to predict how the highest state court would resolve it "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Strother v. S. Cal. Permanente Med. Group,* 79 F.3d 859, 865 (9th Cir.1996) (quotation omitted); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.,* 306 F.3d 806, 812 (9th Cir.2002). In making that prediction, federal courts look to existing state law without predicting potential changes in that law. *Moore v. R.G. Indus., Inc.,* 789 F.2d 1326, 1327 (9th Cir.1986). Although federal courts should not predict changes in a state's law, they "are not precluded from affording relief simply because neither the state Supreme Court nor the state legislature has enunciated a clear rule governing a particular type of controversy." *Air–Sea Forwarders, Inc. v. Air Asia Co., Ltd.,* 880 F.2d 176, 186 (9th Cir.1989) (quotation omitted).

## III. CONVERSION

Defendants move to dismiss Plaintiffs' claims for conversion, arguing ten of the eleven jurisdictions currently at issue do not recognize a cause of action for conversion based on unpaid wages. Plaintiffs argue the jurisdictions at issue would recognize conversion of intangible property, including Defendants' wrongful alteration of Plaintiffs' hours as reflected in Defendants' electronic payroll records. Defendants respond that Plaintiffs' have no property interest in the payroll records themselves, and thus Defendants' alleged alteration of the records cannot constitute conversion. Defendants argue Plaintiffs ultimately seek unpaid wages, which cannot be the subject of a conversion claim.

### A. *Jackson (Dora) v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00229 (Count Three)—Delaware

 "Under Delaware law, conversion is the 'wrongful exercise of dominion over the property of another, in denial of his right, or inconsistent with it.'" *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.,* 42 F.Supp.2d 423, 439 (D.Del.1999) (footnote omitted) (quoting *Carlton Inv. v. TLC Beatrice Int'l Holdings, Inc. et al.,* 1995 WL 694397, at \*16 (Del.Ch. Nov.21, 1995) (unpublished)). To establish a conversion claim, the plaintiff must show he had a property interest in the converted goods, he had a right to possess the goods, and he sustained damages. *Goodrich v. E.F. Hutton Group, Inc.,* 542 A.2d 1200, 1203 (Del.Ch.1988). Although Delaware traditionally applied conversion law only to tangible goods, Delaware follows the modern trend of expanding conversion to encompass intangible goods "where the intangible property relations are merged into a document." *Resource Ventures, Inc.,* 42 F.Supp.2d at 439 (quotation omitted) (holding plaintiff stated a conversion

claim for its proprietary information, including plans, technology, designs, and specifications); *see also Drug, Inc. v. Hunt,* 168 A. 87, 93 (Del.1933) (specific stock certificates could be converted).

■ Delaware does not recognize a cause of action for conversion of money unless "it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally." *Goodrich,* 542 A.2d at 1203.[3] "The rule therefore is that an action for conversion of money will lie only where there is an 'obligation to return the identical money' delivered by the plaintiff to the defendant." *Goodrich,* 542 A.2d at 1203 (quoting *Lyxell v. Vautrin,* 604 F.2d 18, 21 (5th Cir.1979)).

■ Delaware has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Jackson's Complaint. The Court concludes Delaware would not recognize a conversion claim in these circumstances because the unpaid wages constitute an indebtedness that Defendants may discharge by the payment of money generally. Delaware does not recognize a cause of action for conversion based on money that is not specifically identifiable, such as a particular coin or fund, or monies Plaintiff deposited with Defendant which Defendant has failed to return. Plaintiff's unpaid wages are not specifically identifiable funds but represent a general indebtedness.

■ Alternatively Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff Jackson's hours worked. Delaware has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt. The Court concludes Delaware would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged. As explained by the Restatement (Second) of Torts, where a document embodies a personal obligation or represents the title to a chattel and "the right to the immediate possession of a chattel and the power to acquire such possession is represented by a document, such document is regarded as equivalent to the chattel itself." Restatement (Second) of Torts § 242 cmt. a (1965). The Restatement gives as examples promissory notes, bonds, bills of exchange, share certificates, warehouse receipts, in-

---

3. In *Resource Ventures, Inc.,* the federal district court in Delaware concluded the plaintiff stated a conversion claim "with regard to its Proprietary Information" as reflected in "plans, technology, designs, and specifications...." 42 F.Supp.2d at 439. The court then stated the amended complaint contained "sufficient allegations that the Defendants converted the Plaintiff's property by converting the Plaintiff's Proprietary Information to their own use and profit, and by the Defendants' failure to pay monies due to the Plaintiff." *Id.* The district court does not explain what it meant by "monies due," although it appears to arise out of disputes regarding profits from a joint venture in which the plaintiff and defendants were involved. *Id.* at 428, 437. The Court does not conclude from this statement that Delaware would recognize a conversion claim for money representing a general debt. First, the district court indicated the plaintiff stated a conversion claim with regard to the proprietary information, not the "monies due." Second, the plaintiff in that case argued its intangible rights were merged into documents, an argument which the federal district court accepted. Accordingly, the plaintiff apparently asserted more than a conversion based on monies due for a debt. Third, this Court looks first to Delaware state courts to determine Delaware law. *Goodrich* specifically stated a conversion claim does not lie when based on an indebtedness dischargeable by the payment of money generally.

surance policies, and savings bank books. *Id.* cmt. b. Examples of documents which would not fall into this category include executory contracts for land or chattel or contracts for the performance of personal services. *Id.*

Defendants' payroll records do not embody the right to immediately possess the unpaid wages or the power to acquire the wages, and payroll records are not considered the equivalent of the chattel itself, as a promissory note would be. Defendants' payroll records constitute evidence of a general debt owed for services performed, not intangible property rights merged in a document.

The Restatement notes that some courts have recognized a claim for conversion where "the converted document is not in itself a symbol of the rights in question, but is merely essential to their protection and enforcement, as in the case of account books and receipts." *Id.* Delaware has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document. Even if Delaware would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Delaware law requires the plaintiff to have a possessory interest in the converted chattel to assert a conversion claim. Nothing in Delaware law suggests Delaware would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff. Extending Delaware's conversion law to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.

In sum, the Court concludes Delaware would not recognize a claim for conversion based on unpaid wages. Additionally, the Court concludes Delaware would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count three of Plaintiff Jackson's Complaint.

### B. *Williams v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00439 (Count Five)-Utah

In Utah, conversion " 'is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession.' " *State v. Twitchell,* 832 P.2d 866, 870 (Utah Ct.App.1992) (quoting *Allred v. Hinkley,* 8 Utah 2d 73, 328 P.2d 726, 728 (1958)). Utah follows the general rule that to maintain a cause of action for conversion, the plaintiff must be entitled to possess the converted property at the time of the alleged conversion. *Benton v. State, Div. of State Lands & Forestry, Dep't of Natural Res.,* 709 P.2d 362, 365 (1985). "An interest in the property which does not carry with it a right to possession is not sufficient; the right to maintain the action may not be based upon a right to possession at a future time." *Id.* at 365–66 (quotation and emphasis omitted). Additionally, money may not be the subject of conversion unless the defendant "wrongfully received it" or where rights to money are merged in a document, such as converting a check representing proceeds from a note and mortgage. *Twitchell,* 832 P.2d at 870 (holding defendant liable for conversion where he retained victims' insurance premium payments in a personal or corporate account rather than the trust account and expended the funds for his personal purposes); *Phillips v. Utah State Credit Union,* 811 P.2d 174, 179 (Utah 1991).

Utah has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Williams' Complaint. The Court concludes Utah would not recognize a conversion claim in these circumstances because unpaid wages constitute money not subject to conversion under Utah law unless Defendants wrongfully received the money. There is no allegation in the Complaint that Plaintiff Williams gave money to Defendants which Defendants then converted to their own use or that Defendants somehow wrongfully received money reflecting Plaintiff's unpaid wages. Rather, the Complaint alleges Defendants wrongfully failed to pay Plaintiff's wages.

*Twitchell* does not compel a different result. In *Twitchell*, the defendant owned an insurance brokerage business. 832 P.2d at 867. The defendant promised some clients that their premium payments made to him would secure insurance from licensed insurance companies. *Id.* Rather than obtain the insurance, the defendant kept the premiums and paid any damages claims himself. *Id.* Facing criminal charges, the defendant pled guilty to theft by deception and was ordered to pay restitution. *Id.* The defendant objected to having to pay the ordered restitution. *Id.* at 868. · Under the Utah scheme, restitution for pecuniary damages was determined with reference to damages recoverable in a civil action. *Id.* The Utah Court of Appeals used the conversion cause of action to determine whether the defendant owed restitution and found the defendant admitted to converting the premium payments by depositing them into his own account rather than into a trust account for purchasing insurance. *Id.* at 869–70.

*Twitchell* falls within a traditionally recognized fact pattern for conversion because it involves the defendant using for his own, unauthorized purposes specific funds the plaintiff entrusted to him for a specific purpose. *See id.* at 870; *Bennett v. Huish,* 155 P.3d 917 (Utah Ct.App.2007) (holding defendant converted loan proceeds by refusing to return unused funds which plaintiff entrusted to him to apply towards future loan extension fees). *Twitchell* does not involve unpaid wages or a general debt as alleged in Plaintiff Williams' Complaint.

█ Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff Williams' hours worked. Utah has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt. The Court concludes Utah would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not. Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Utah has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document. Even if Utah would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Utah law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion. Nothing in Utah law suggests Utah would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff. Extend-

ing conversion to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.

In sum, the Court concludes Utah would not recognize a claim for conversion based on unpaid wages. Additionally, the Court concludes Utah would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count five of Plaintiff Williams' Complaint.

### C. *Cole v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00437 (Count Four)-Montana

█ To establish a conversion claim under Montana law, the plaintiff must establish it owned an interest in the property, it had a right to possess the property at the time of the alleged conversion, the defendant exercised unauthorized dominion over that property, and resulting damages. *Trifad Entm't, Inc. v. Anderson,* 306 Mont. 499, 36 P.3d 363, 369 (2001); *King v. Zimmerman,* 266 Mont. 54, 878 P.2d 895, 899 (1994). "[A]n action in conversion does not lie against a general account as there can be no conversion of a debt" within the debtor-creditor relationship. *Free v. Elberson,* 157 Mont. 424, 486 P.2d 857, 862 (1971). However, intangible obligations merged into a document, such as a check or settlement draft, may be the subject of conversion. *See Eatinger v. Johnson,* 269 Mont. 99, 887 P.2d 231, 235 (1994) (defendant cashed check against plaintiff's instruction not to do so); *Lane v. Dunkle,* 231 Mont. 365, 753 P.2d 321, 322–23 (1988) (defendant forged plaintiff's endorsement and cashed check).

█ Montana has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Cole's Complaint. The Court concludes Montana would not recognize a conversion claim in these circumstances because Montana does not permit a conversion action on a general account within the debtor-creditor relationship. Here, Plaintiff Cole pursues unpaid wages, a general debt Defendants allegedly owe her. Because Plaintiff Cole and Defendants are in a debtor-creditor relationship if Plaintiff's allegations are true, no conversion action will lie under Montana law.

*Dunkle* does not compel a different result. In *Dunkle,* the defendant-manager forged the plaintiff-employee's endorsement on three commission checks. 753 P.2d at 367. *Dunkle* thus falls into the traditionally recognized fact pattern for conversion in which intangible rights are merged into a document, i.e., a check. Although the check represented the employee's commissions, the defendant converted the checks not a general debt owing on the commissions. *Id.*

Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff Cole's hours worked. Montana has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt. The Court concludes Montana would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not. Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Additionally, Montana has not signaled an intent to extend its conversion law be-

yond those situations where intangible property rights are merged into a document. Even if Montana would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Montana law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion. Nothing in Montana law suggests Montana would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff. Extending conversion to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.

In sum, the Court concludes Montana would not recognize a claim for conversion based on unpaid wages. Additionally, the Court concludes Montana would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count four of Plaintiff Cole's Complaint.

### D. *McFarlin v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00228 (Count Two)-Alaska

 In Alaska, conversion is the " 'intentional exercise of dominion and control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.' " *Carver v. Quality Inspection & Testing, Inc. (I),* 946 P.2d 450, 456 (Alaska 1997) (quoting *Dressel v. Weeks,* 779 P.2d 324, 328 (Alaska 1989)). "To establish a claim for conversion, the plaintiff must prove (1) that she had a possessory interest in the property; (2) that the defendant

interfered with the plaintiff's right to possess the property; (3) that the defendant intended to interfere with plaintiffs possession; and (4) that the defendant's act was the legal cause of the plaintiff's loss of the property." *Silvers v. Silvers,* 999 P.2d 786, 793 (Alaska 2000). Alaska has permitted a claim for conversion of money where that money was specifically identifiable as a certain envelope of cash left in a decedent's safe for which the decedent left specific instructions as to who should receive it upon her death. *Dressel,* 779 P.2d at 327–28. Additionally, Alaska recognizes conversion claims where intangible rights are merged into a document, such as a paycheck. *Domke v. Alyeska Pipeline Serv. Co., Inc.,* 137 P.3d 295, 298 (Alaska 2006) (employee deposited paychecks representing overpayments).

Prior to transmittal to this Court, the United States District Court for the District of Alaska dismissed from Plaintiff McFarlin's original Complaint a claim for conversion, ruling that Alaska does not recognize a claim for conversion for unpaid wages owed. (*McFarlin v. Wal–Mart Stores, Inc.,* 2:06–CV–00228, Doc. # 28, Order dated Sept. 12, 2005.) The dismissal was without prejudice and Plaintiff McFarlin has re-pled a claim for conversion in his Amended Complaint.

 Alaska has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff McFarlin's Amended Complaint. The Court concludes Alaska would not recognize a conversion claim in these circumstances because, as the District of Alaska already has ruled, McFarlin cannot assert a conversion claim for unpaid wages under Alaska law. *Domke* does not alter this conclusion. In *Domke,* an accounting error resulted in the employer issuing five additional paychecks to its employee. 137 P.3d at 297. The employee deposited four

of the paychecks and returned one of them to the employer. *Id.* The employer subsequently terminated the employee due to disputes with another employee. *Id.* at 297–98. When the employee sued regarding his termination, the employer counterclaimed for conversion of the overpayments. *Id.* at 298. The Alaska Supreme Court remanded the matter to the district court to determine a statute of limitations issue, but expressed no reservations about whether a conversion had occurred. *Id.* at 301–02.

*Domke* falls within a traditionally recognized fact pattern for conversion where an individual converts intangible rights merged into a document, in this case, paychecks. That the checks represented employee compensation does not make it comparable to the allegations in McFarlin's Amended Complaint. McFarlin does not allege Defendants converted his paychecks. Rather, he alleges Defendants never paid him for wages he earned.

■ Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff McFarlin's hours worked. Alaska has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt. The Court concludes Alaska would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not. Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Additionally, Alaska has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document. Even if Alaska would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Alaska law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion. Nothing in Alaska law suggests Alaska would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff. Extending conversion to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages. *See K & K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 717 (Alaska 2003) (expressing doubt about permitting a conversion claim where the claim sounded in contract because "every contract breach cannot be turned into a tort").

In sum, the Court concludes Alaska would not recognize a claim for conversion based on unpaid wages. Additionally, the Court concludes Alaska would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count two of Plaintiff McFarlin's Amended Complaint.

### E. *Poha v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00230 (Count Seven)-Hawaii

■ In Hawaii, "[a]ny distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion." *Tsuru v. Bayer*, 25 Haw. 693, 1920 WL 830, *2 (Hawaii Terr.1920). Traditionally, conversion occurs when a defendant "detain[s]

goods so as to deprive the person entitled to the possession of his dominion over them." *Id.* However, Hawaii has followed the modern trend and recognizes a claim for conversion where property rights are merged into a document, such as a bill of lading. *Matsuda v. Wada,* 101 F.Supp.2d 1315, 1322 (D.Haw.1999) (holding plaintiff stated conversion claim where he owned boat and consequently had a right to possess bill of lading, but defendant refused to turn over bill of lading until plaintiff paid for other services rendered).

■■ Hawaii has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiffs' Complaint. The Court concludes Hawaii would not recognize a conversion claim in these circumstances. Hawaii generally adopts the common law for civil actions. *See* Haw.Rev.Stat. § 1–1. Hawaii's definition of conversion to date has specified that it applies to "goods," reflecting the common law roots of the conversion cause of action. Although Hawaii has extended conversion to include intangible rights merged into a document, Hawaii has not indicated an intent to permit a conversion claim based on unpaid wages or any similar general debt. Absent direction from Hawaii that it would extend conversion to cover a general debt, the Court concludes Hawaii would continue to adhere to the theory that conversion applies to tangible goods or intangible rights merged into a document, such as the bill of lading in *Matsuda.* Permitting a conversion claim on a general debt runs the risk of turning ordinary breach of contract claims into torts. The Court concludes Hawaii would decline to extend its existing law in these circumstances, particularly where Plaintiffs have other theories through which they may pursue the allegedly unpaid wages.

*Hough v. Pac. Ins. Co., Ltd.* does not compel a different result. 83 Hawai'i 457, 927 P.2d 858 (1996). In *Hough,* the plain-tiff suffered a work-related injury for which he sought worker's compensation benefits. *Id.* at 861. When the insurer terminated his benefits, the employee brought suit alleging the insurer committed several torts, including conversion, and acted in bad faith in processing his claim. *Id.* at 863. The lower court granted the insurer's motion for summary judgment on the conversion claim, concluding withholding the compensation funds did not amount to conversion. *Id.* Although the lower court concluded the worker's compensation laws did not bar the employee from seeking tort remedies, the lower court later granted another motion for summary judgment in the insurer's favor, finding the worker's compensation laws provided the plaintiff with his exclusive remedy. *Id.*

On appeal, the Hawaii Supreme Court stated the lower court granted summary judgment based on the merits of the conversion claim, however, the Hawaii Supreme Court never addressed the merits of the conversion claim in its decision. Instead, it treated the conversion claim as if the lower court had granted summary judgment on the basis that the worker's compensation laws barred the conversion tort. The Hawaii Supreme Court thus reversed and remanded the conversion claim for trial on the basis the claim was not barred, but the Hawaii Supreme Court never addressed substantively the lower court's ruling that the employee failed to state a conversion claim for the insurer's *withholding of compensation benefits.* Because the Hawaii Supreme Court did not substantively address the conversion claim on the merits, this Court does not conclude the Hawaii Supreme Court implicitly overruled the lower court's ruling.

■■ Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiffs' hours worked. Hawaii has not addressed wheth-

er payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt. The Court concludes Hawaii would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not. Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Additionally, Hawaii has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document. Even if Hawaii would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Hawaii law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion. Nothing in Hawaii law suggests Hawaii would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff.

In sum, the Court concludes Hawaii would not recognize a claim for conversion based on unpaid wages. Additionally, the Court concludes Hawaii would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count seven of Plaintiffs' Complaint.

## F. *Woods v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00436 (Count Five)-Maine

■■■■■ To establish a conversion claim under Maine law, the plaintiff must have a property interest which the defendant converted, the plaintiff had a right to possession at the time of the alleged conversion, and the plaintiff made a demand for the property's return, which the defendant refused. *Leighton v. Fleet Bank of Me.*, 634 A.2d 453, 457 (Me.1993). Maine will permit a conversion claim for money where it is "capable of being identified, as when delivered at one time, by one act and in one mass ... or when the deposit is special and the identical money is to be kept for the party making the deposit, or when wrongful possession of such property is obtained." *Hazelton v. Locke*, 104 Me. 164, 71 A. 661, 662–63 (1908) (citations omitted). Maine has noted that money has a "distinctive quality" different from other kinds of property because title to money passes by delivery and because it is fungible, its identity is lost by being changed into other money or its equivalent. *Hazelton*, 71 A. at 663.

■■■■ Under Maine law, conversion "may extend to certain types of intangibles, for example a right to payment, or a right to withdraw funds, that are 'customarily merged in or identified with some document,'... such as a promissory note or bank book." *N.E. Coating Tech., Inc. v. Vacuum Metallurgical Co., Ltd.*, 684 A.2d 1322, 1324 (Me.1996) (quoting Restatement (Second) of Torts, § 242). However, "the unfair use and appropriation of information that is not customarily merged in a particular document is more appropriately addressed by other remedies, including those created for unfair competition or misappropriation of trade secrets." *Id.; see also Innovative Network Solutions, Inc. v. Onestar Commc'ns, LLC*, 283

F.Supp.2d 295, 301 (D.Me.2003) (suggesting Maine would not permit a duplicative tort remedy for conversion where the plaintiff had a contractual remedy).

Maine has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Woods' Complaint. The Court concludes Maine would not recognize a conversion claim in these circumstances because Maine law does not recognize conversion for money unless it is identifiable, a deposit is special and the identical money is to be kept for the party making the deposit, or the defendant wrongfully obtained possession of the money. None of these situations apply here. Plaintiff's unpaid wages are not specifically identifiable, rather they reflect an alleged general debt Defendants owe Plaintiff. Plaintiff makes no allegation he specially deposited funds with Defendants. Further, although Plaintiff alleges Defendants wrongfully failed to pay his wages, there is no allegation Defendants wrongfully obtained the funds to pay Plaintiff's wages.

Although *Bisbing v. Maine Med. Ctr.* is somewhat analogous to Plaintiff Woods' allegations, the Court concludes *Bisbing* is distinguishable and does not suggest Maine would recognize a claim for conversion as pled in Plaintiff's Complaint. In *Bisbing*, the plaintiff was an employee who alleged his employer deposited "unpaid vacation wages" into his account and the employer subsequently withdrew the funds. 2002 WL 1978903, *3 (Me.Super.2002) (unpublished). The federal district court in Maine concluded those allegations stated a claim for conversion. *Id.*

In *Bisbing*, the employer paid the employee an identifiable payment for unpaid vacation time and then wrongfully withdrew it. Because Maine recognizes a conversion claim for money wrongfully obtained, *Bisbing* is a conventional application of Maine conversion law. Here,

Plaintiff Woods does not allege Defendants paid his wages and then withdrew them from his accounts. Rather, Plaintiff alleges Defendants never paid his wages. Although Plaintiff alleges Defendants wrongfully failed to pay his wages, he does not allege Defendants wrongfully obtained the funds to pay his wages. Plaintiff Woods' allegations would extend Maine's conversion law beyond its present boundaries. The Court concludes Maine would not recognize a conversion claim as pled in Plaintiff's Complaint, particularly where Maine has cautioned against creating tort remedies where the plaintiff has contractual remedies.

Plaintiffs also rely on *Warner v. Atkinson Freight Lines Corp.*, 350 F.Supp.2d 108 (D.Me.2004). In *Warner*, the employer began withdrawing from employees' salaries a four percent contribution towards an employee stock ownership program. *Id.* at 112–13. The employer placed the funds into an escrow account pending creation of the program. *Id.* at 113. The employer never finalized the program and the employer returned payments to all its current employees. *Id.* However, the employer did not return the money to former employees who had contributed to the program but who no longer were employed by the time the employer refunded the money. *Id.* The plaintiffs were former employees who brought suit against the employer alleging, among other things, conversion of the funds. *Id.* at 112–13. The *Warner* court did not decide the merits of the conversion claim, instead it found the Employee Retirement and Income Security Act did not preempt the claim. *Id.* at 124–25. Nevertheless, the *Warner* case falls within a traditionally recognized fact pattern for a conversion claim where the plaintiff entrusts segregated funds with the defendant for a specified purpose. Consequently, *Warner* does not stand for the general proposition that an employer is

liable for conversion where the employer fails to pay an employee's wages.

█ Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff Woods' hours worked. Maine has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt. The Court concludes Maine would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not. Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Additionally, Maine has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document. Even if Maine would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Maine law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion. Nothing in Maine law suggests Maine would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff. Extending conversion to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages. Maine has expressed skepticism towards extending the tort of conversion to cover claims for which the plaintiff has contractual remedies.

In sum, the Court concludes Maine would not recognize a claim for conversion based on unpaid wages. Additionally, the Court concludes Maine would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count five of Plaintiff Woods' Amended Complaint.

### G. *Curless v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00440 (Count Three)-Wyoming

█ To establish a conversion claim under Wyoming law, a plaintiff must show: (1) he had legal title to the converted property; (2) he either had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff his rights to use and enjoy the property; (4) in those cases where the defendant lawfully, or at least without fault, obtained possession of the property, the plaintiff made some demand for the property's return which the defendant refused; and (5) the plaintiff has suffered damage by the loss of the property.

*Ferguson v. Coronado Oil Co.,* 884 P.2d 971, 975 (Wyo.1994) (quotation omitted). "Only personal property (chattel) can be converted." *Id.* Wyoming recognizes a conversion claim for money so long as it is identifiable and the defendant has an obligation to deliver the money in a specific manner. *Id.* at 978 (holding oil and gas royalty capable of being converted when it accrues and then defendant wrongfully retains it); *O'Donnell v. W. Nat'l Bank of Casper,* 705 P.2d 1242, 1243, 1245 (Wyo. 1985) (holding statute of limitations barred

conversion claim against bank for diverting funds from a loan into two other accounts to pay pre-existing debts of the bank customer's company).

 Wyoming has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Curless' Complaint. The Court concludes Wyoming would not recognize a conversion claim in these circumstances. The parties agree the closest analogy in Wyoming law is *Ferguson*, in which the plaintiff had a net profits interest in oil produced through certain waterflood operations in the Osage oil field. *Ferguson*, 884 P.2d at 974. Through certain accounting schemes, the defendant made it appear as if the oil field operations produced no net profits when in fact it had. *Id.* The plaintiff discovered the defendant's scheme and sued for, among other things, conversion of the plaintiff's net profits interest. *Id.* at 974–75. The defendant argued a net profits interest was a contractual obligation, not personal property subject to conversion. *Id.* at 975.

The Wyoming Supreme Court explained that to be subject to conversion, the interest at issue must be a personal property interest. *Id.* The Court then examined whether a net profits interest was contractual in nature or whether it was akin to personal property. *Id.* at 975–76. The Court found a net profits interest in oil is similar to a non-participating royalty interest, which is a right to oil and gas only after it is removed from the ground. *Id.* at 977. Under Wyoming law, when oil and gas are removed from the ground, they become personal property. *Id.* Therefore, the Court ruled that similar to a royalty interest, a net profits interest once accrued is personal property subject to conversion. *Id.* The Court then found that although the property interest at issue was money, it was subject to conversion because it was specifically identifiable and the manner of payment was specified in the relevant agreement between the parties. *Id.* at 978.

Under *Ferguson*, the Court first must determine whether Plaintiff claims a personal property interest because only personal property is subject to conversion in Wyoming. The Court concludes Plaintiff has not identified personal property subject to conversion. Unlike a net profits or royalty interest, which in effect are monetarily representative of the individual's personal property right in oil or gas extracted from the ground, Plaintiff seeks unpaid wages, which is a monetary obligation due for services rendered. The unpaid wages are not chattel but a debt allegedly owed or contractual obligation allegedly unfulfilled. Accordingly, the unpaid wages are not personal property under Wyoming law, and therefore are not subject to conversion.

 Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff Curless' hours worked. Wyoming has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt. The Court concludes Wyoming would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not. Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Additionally, Wyoming has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a docu-

ment. Even if Wyoming would expand its conversion law to cover the conversion of evidence essential to protect and enforce intangible property rights, Wyoming law requires the plaintiff to have a possessory interest in the converted chattel at the time of the conversion. Nothing in Wyoming law suggests Wyoming would eliminate this required element of a conversion claim where the plaintiff asserts the defendant altered a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff. Extending conversion to cover this type of claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.

In sum, the Court concludes Wyoming would not recognize a claim for conversion based on unpaid wages. Additionally, the Court concludes Wyoming would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count three of Plaintiff Curless' Complaint.

### H. *Stafford v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00438 (Count Three)-Nebraska

■ Conversion under Nebraska law is "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Allen v. Dealer Assistance, Inc.,* 207 Neb. 455, 299 N.W.2d 744, 747 (1980). At the time of the alleged conversion, the plaintiff must be entitled to immediately possess identified property. *Id.; Elander v. Kellogg Grain Co.,* 174 Neb. 782, 119 N.W.2d 522, 526 (1963). Identifying property with reasonable accuracy becomes more difficult when dealing with commingled fungible property, such as identifying the plaintiff's share of grain in a commingled quantity which includes grain belonging to another individual. *Otto Farms, Inc. v. First Nat'l Bank of York,* 228 Neb. 287, 422 N.W.2d 331, 334 (1988).

■ In Nebraska, money, bank bills, notes, and bonds may be the subject of conversion. *State v. Omaha Nat'l Bank,* 59 Neb. 483, 81 N.W. 319, 321–22 (1899). Although Nebraska recognizes money is different than other chattel, as it is intended to pass quickly from hand to hand and possession represents right and title thereto, where money is earmarked or specially designated it is subject to conversion. *Id.* For example, where a decedent and her niece were named on joint accounts with a right of survivorship, the defendant banks converted the funds therein when they refused to give the funds to the surviving niece and instead transferred the funds to the administrator of the decedent's estate. *Zimmerman v. FirsTier Bank, N.A.,* 255 Neb. 410, 585 N.W.2d 445, 452 (1998). Additionally, where a defendant allegedly obtains funds wrongfully, a conversion action will lie. *Ochs v. Makousky,* 249 Neb. 960, 547 N.W.2d 136, 139 (1996) (holding it was a question of fact for jury whether defendant removed without permission $50,000 from joint account of elderly woman for whom he provided care-taking services).

■ Nebraska has not addressed whether it would recognize a conversion claim for unpaid wages as pled in Plaintiff Stafford's Amended Complaint. The Court concludes Nebraska would not recognize a conversion claim in these circumstances because Plaintiff seeks unpaid wages which consist of commingled fungible monetary funds in Defendants' possession. Plaintiff cannot identify any specific personal property with reasonable accuracy. Plaintiff does not allege the unpaid wages are held by Defendants in some earmarked or specially designated fashion, or that Defendant wrongfully received the

funds from Plaintiff. Instead, Plaintiff alleges Defendants owe her money on an obligation. These allegations do not fall within any factual pattern Nebraska recognizes as a conversion.

None of the cases upon which Plaintiffs rely alters the Court's conclusion. In *Roth v. Farmers Mut. Ins. Co. of Nebraska*, the plaintiff owned an insurance policy which covered theft of his swine but which did not cover wrongful conversion. 220 Neb. 612, 371 N.W.2d 289, 290 (1985). The plaintiff entered into a business deal with another individual who sold the swine but failed to pay the plaintiff his share. *Id.* The plaintiff filed a claim with his insurance company for the theft of his swine. *Id.* The insurer refused to pay, contending the swine were converted, not stolen. *Id.* The Nebraska Supreme Court held the person who sold the hogs lawfully possessed them under the parties' agreement, but converted the proceeds from the sale. *Id.* at 291. The Court thus held the policy exclusion for conversion applied. *Id.* at 292. *Roth* involved the conversion of proceeds from the sale of chattel, not the failure to pay a general debt for services performed.

In *Terra Western Corp. v. Berry and Co.*, the plaintiff held a security interest in a corn crop which was destroyed by hail. 207 Neb. 28, 295 N.W.2d 693, 695–96 (1980). The insurer paid the insured on the claim for the destroyed crop instead of paying the plaintiff on its security interest in the crop. *Id.* at 696. The plaintiff brought a claim against the insurer for conversion of the insurance proceeds. *Id.* The Nebraska Supreme Court held that under the relevant law, the proceeds did not become subject to the security interest until the insured received the proceeds. *Id.* at 697–98. Consequently, the Court held the plaintiff did not state a cause of action for conversion because the plaintiff did not allege facts which gave it a proper-

ty interest in the funds before the insured received the proceeds. *Id.* at 698. *Terra* involved the alleged conversion of a specific, identifiable insurance payment in which the plaintiff alleged a security interest. *Terra* is not analogous to the allegations in Plaintiff Stafford's Complaint regarding the failure to pay wages.

■ Alternatively, Plaintiffs argue Defendants converted the electronic payroll records evidencing Plaintiff Stafford's hours worked. Nebraska has not addressed whether payroll records, or other records evidencing a debt, may be the subject of conversion, and if so, whether it would recognize such a claim where the plaintiff has not alleged a possessory interest in the document evidencing the debt. The Court concludes Nebraska would not expand its conversion law to cover any record which evidences a debt dischargeable through the payment of money generally as opposed to a document in which property rights are merged for the same reasons Delaware would not. Defendants' payroll records constitute evidence of money owed, not intangible property rights merged in a document.

Additionally, Nebraska has not signaled an intent to extend its conversion law beyond those situations where intangible property rights are merged into a document. Plaintiffs contend *Mundy v. Decker* establishes a person can convert electronic records. 1999 WL 14479, *4 (Neb.Ct.App. 1999) (unpublished). In *Mundy*, a secretary deleted from her employer's computer system documents she had saved on her work computer, including both her personal documents and the company's documents. *Id.* at *1. The evidence established the computer and its contents were the employer's property. *Id.* at *4. The Court suggested that had the employee deleted only her private correspondence stored on her employer's computer, no conversion

would have occurred. *Id.* But because the employee deleted the entire directory of word processing documents, including both personal and business documents, she converted the business documents unless the employer authorized her to destroy them. *Id.*

*Mundy* is an application of existing conversion law. *Mundy* involved the deletion of documents, albeit in electronic form. The Nebraska Court of Appeals likened the destruction of electronic documents to throwing out physical letters. *Id.* at *4. Although the Nebraska Court of Appeals extended conversion to electronic documents, it did not eliminate as a required element of a conversion claim that the plaintiff have a possessory interest in the converted property. The *Mundy* Court specifically distinguished between documents belonging to the employer versus personal documents, and specifically referred to the computer directory as "owned and controlled by [the employer]." *Id.* at *4, *6. Nebraska thus has not signaled an intent to extend conversion to a defendant altering a document which the plaintiff had no right to possess where that document evidenced a general debt the defendant owed the plaintiff. The Court concludes Nebraska would not eliminate the element of a possessory interest from a conversion claim, as *Mundy* illustrates. Further, Nebraska has indicated an unwillingness to extend conversion to factual scenarios that involve "rights" as opposed to personal property. *See Fun World, Inc. v. Big Red Keno, Ltd.,* 1999 WL 79391, *5 (Neb.Ct.App.1999) (rejecting conversion claim based on allegations a competitor began to sell "pickle cards" under a lease agreement in derogation of the plaintiff's exclusive right to sell "pickle cards" in the same location). Extending conversion to cover Plaintiff's claim is particularly unwarranted where, as here, the plaintiff may pursue alternative causes of action to recover the allegedly unpaid wages.

In sum, the Court concludes Nebraska would not recognize a claim for conversion based on unpaid wages. Additionally, the Court concludes Nebraska would not recognize a conversion claim where a defendant alters its own electronic payroll records to avoid paying the plaintiff's wages. Accordingly, the Court will grant Defendants' motion and will dismiss count three of Plaintiff Stafford's Amended Complaint.

**I. *Hall v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–101099 (Count Two)-Nevada**

Although Defendants assert generally that none of the ten relevant jurisdictions, including Nevada, would recognize a conversion claim as pled in Plaintiff Hall's Complaint, Defendants cite no law from Nevada nor do they make any specific argument regarding whether Nevada would recognize a conversion claim under the facts Plaintiff Hall alleges. Pursuant to Local Rule 7–2(d), "[t]he failure of a moving party to file points and authorities in support of the motion shall constitute a consent to the denial of the motion." Defendants did not support their motion with points and authorities with respect to Nevada despite the fact that Defendants' motion requires an examination of each state's law. Defendants therefore have consented to the denial of their motion with respect to Nevada. Accordingly, the Court will deny Defendants' motion to dismiss count two of Plaintiff Hall's Amended Complaint.

**J. *Jackson (Reginald) v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00231 (Count Five)-Idaho**

Although Defendants assert generally that none of the ten relevant jurisdictions, including Idaho, would recognize a conver-

sion claim as pled in Plaintiff Jackson's Complaint, Defendants cite no law from Idaho nor do they make any specific argument regarding whether Idaho would recognize a conversion claim under the facts Plaintiff Jackson alleges. Pursuant to Local Rule 7–2(d), "[t]he failure of a moving party to file points and authorities in support of the motion shall constitute a consent to the denial of the motion." Defendants did not support their motion with points and authorities with respect to Idaho despite the fact that Defendants' motion requires an examination of each state's law. Defendants therefore have consented to the denial of their motion with respect to Idaho. Accordingly, the Court will deny Defendants' motion to dismiss count five of Plaintiff Jackson's Complaint.

## IV. UNJUST ENRICHMENT

Defendants argue Plaintiffs fail to state a claim for unjust enrichment because Plaintiffs have an adequate remedy at law. Plaintiffs respond their unjust enrichment claims seek to remedy the injustice of Defendants reducing their payroll expenses and increasing profits by obtaining unpaid labor from their employees and, in the interest of justice, Defendants should have to disgorge their ill-gotten profits. Plaintiffs argue merely requiring Defendants to pay low-hourly-pay employees their wages plus interest does not address Defendants' conscious wrongdoing in intentionally manipulating the payroll records to both cheat its employees and to gain unfair competitive advantage in the marketplace by artificially lowering payroll expenses. Plaintiffs argue disgorgement of profits is required to deter such conscious wrongdoing. Plaintiffs therefore argue they do not have an adequate remedy at law.[4]

### A. *Jackson (Dora) v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00229 (Count Four)-Delaware

 Under Delaware law, unjust enrichment is "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Total Care Physicians, P.A. v. O'Hara*, 798 A.2d 1043, 1056 (Del.Super.Ct.2001) (quotation omitted). To establish unjust enrichment, the plaintiff must show: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Id.* (quotation omitted). A remedy at law is adequate if it "(1) is as complete, practical and as efficient to the ends of justice and its prompt administration as the remedy in equity, and (2) is obtainable as of right." *In re Wife, K.*, 297 A.2d 424, 426 (Del.Ch.1972).

 The equitable theories of unjust enrichment and quantum meruit are available only in the absence of a formal contract. *Nepa v. Marta*, 415 A.2d 470, 472 (Del.1980); *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del.1979). Restitution is a remedy for unjust enrichment. *Jacobson v. Dryson Acceptance Corp.*, 2002 WL 31521109, * 14 (Del.Ch. 2002) (unpublished). Delaware further has expressed that it is not beyond the state's traditional law that "a party that recklessly disregarded the property rights of another should be required to disgorge all profits it wrongly obtained...." *Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co., Inc.*, 866 A.2d 1, 40 n. 96 (Del.Supr.2005).

---

**4.** The plaintiff in *John Luce v. Wal–Mart Stores, Inc.*, 2:06–CV–00232–PMP–PAL does not assert a claim for unjust enrichment.

■ Plaintiff's Complaint does not allege the existence of an express contract, and therefore the Court will not dismiss her unjust enrichment/quantum meruit claim on the basis that the parties' relationship is controlled by an express contract. Even if Plaintiff had alleged an express contract, Plaintiff may plead alternative, inconsistent theories. Pursuant to Federal Rule of Civil Procedure 8(e)(2),

A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

The liberal policy reflected in Rule 8(e)(2) instructs courts not to construe a pleading " 'as an admission against another alternative or inconsistent pleading in the same case.' " *McCalden v. Cal. Library Ass'n,* 955 F.2d 1214, 1219 (9th Cir.1990) (quoting *Molsbergen v. United States,* 757 F.2d 1016, 1019 (9th Cir.1985)). Thus, although a plaintiff may not recover on both theories, "a plaintiff may claim ... remedies as alternatives, leaving the ultimate election for the court." *E.H. Boly & Son, Inc. v. Schneider,* 525 F.2d 20, 23 n. 3 (9th Cir. 1975); *see also Hubbard Bus. Plaza v. Lincoln Liberty Life Ins. Co.,* 596 F.Supp. 344, 347 (D.Nev.1984) (stating a "claimant is entitled to introduce his evidence in support of all his claims for relief; if he doesn't make an election among them, the trier of fact decides which, if any, to sustain."). Accordingly, the Court will not dismiss Plaintiff's unjust enrichment claim, as Plaintiff may plead it in the alternative to contractual allegations.

■ As to whether Plaintiff has an adequate remedy at law, Plaintiff asserts claims for statutory wage and hour violations. Thus, from the face of Plaintiff's Complaint it is evident she has a remedy at law. However, Plaintiff contends her remedies at law are not adequate. Plaintiff sues under two Delaware statutory provisions regarding the payment of wages: minimum wage and payment of wages on a regular payday. Del.Code Ann. tit. 19, § 902, § 1102. Delaware's minimum wage statute provides only for the payment of the wage plus costs of suit and attorney's fees. Del.Code Ann. tit. 19, § 911. However, the statute governing payment of wages on regular paydays provides for recovering both the unpaid wages and liquidated damages. Del.Code Ann. tit. 19, § 1113. The liquidated penalty provision is not specific as to whether it applies to all employers or only those employers who intentionally, wrongfully fail to pay wages on regular paydays.

Delaware has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether a generally applicable liquidated damages penalty would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing. However, the liquidated damages penalty applies regardless of an employer's intent and thus may not provide a full remedy to address Defendants' allegedly intentional misconduct. Further, Delaware has expressed favor towards permitting the disgorgement remedy for breaches of fiduciary duty, wrongful conduct, and for reckless disregard for another's property rights. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defen-

dants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count four of Plaintiff Jackson's Complaint.

### B. *Williams v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00439 (Count Seven)—Utah

Under Utah law, quantum meruit is a theory of recovery for payment for labor the plaintiff performed which the plaintiff, for some reason, cannot recover based on an express contract. *Davies v. Olson,* 746 P.2d 264, 268 (Utah Ct.App. 1987). Utah has described quantum meruit as having two distinct branches, both of which "are rooted in justice ... to prevent the defendant's enrichment at the plaintiff's expense." *Id.* at 269 (quotation omitted). The first branch consists of contracts implied in law, also known as quasi-contract or unjust enrichment. *Id.* "A quasi-contract is not a contract at all, but rather is a legal action in restitution." *Id.* To establish unjust enrichment, the plaintiff must establish: "(1) the defendant received a benefit; (2) an appreciation or knowledge by the defendant of the benefit; (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it." *Id.* The second branch of quantum meruit is a contract implied in fact which is a contract established by the parties' conduct. *Id.* To establish a contract implied in fact, the plaintiff must establish: "(1) the defendant requested the plaintiff to perform work; (2) the plaintiff expected the defendant to compensate him or her for those services;

and (3) the defendant knew or should have known that the plaintiff expected compensation." *Id.* Both branches of quantum meruit "presuppose[ ] that no enforceable written or oral contract exists." *Id.*

Count nine of Plaintiff Williams' Complaint specifically pleads an employment contract existed between Defendants and each class member.[5] (2:06–CV–00439, Compl. [Doc. # 1] at ¶ 95.) Because Plaintiff specifically alleges an employment contract, Plaintiff cannot also maintain a claim for unjust enrichment/quantum meruit under Utah law because the contract would be the sole legal remedy. However, as discussed above, Plaintiff may plead the contractual and equitable claims in the alternative under Rule 8(e)(2). Accordingly, the Court will not dismiss Plaintiff's unjust enrichment claim, as Plaintiff is entitled to plead it in the alternative to the contractual allegations.

With respect to whether Plaintiff has an adequate remedy at law that would preclude recovery on an equitable unjust enrichment theory, Plaintiff pursues remedies under Utah wage laws that permit a private cause of action upon separation and demand for wages. Utah Code Ann. § 34–28–5. The provision provides a penalty permitting the employee's wages to continue to accrue for up to sixty days after separation, however an employee must make written demand for payment. *Id.* The penalty does not depend on whether the employer's violations were willful or intentional.

Utah has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether a generally applicable sixty-day penalty would constitute an adequate legal remedy

---

**5.** Plaintiff's Complaint does not assert a count for breach of contract, but does assert a count for breach of the covenant of good faith and fair dealing. Plaintiff's Complaint sets forth a heading for count eight, but contains no text beneath the heading. Count nine is the breach of the covenant of good faith and fair dealing claim.

given Plaintiff's allegations of conscious wrongdoing. However, the liquidated damages penalty applies regardless of an employer's intent and thus may not provide a full remedy to address Defendants' allegedly intentional misconduct. Further, Utah has indicated its quantum meruit law is intended to do justice. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count seven of Plaintiff Williams' Complaint.

### C. *Cole v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00437 (Count Five)— Montana

██ Under Montana law, unjust enrichment is an equitable doctrine requiring the plaintiff to establish misconduct or fault on the defendant's part, or the defendant took advantage of the plaintiff in some manner. *Schweigert v. Fowler*, 240 Mont. 424, 784 P.2d 405, 411 (1990). To establish unjust enrichment, the plaintiff must show the defendant received a benefit and retention of the benefit would be unjust. *Lawrence v. Clepper*, 263 Mont. 45, 865 P.2d 1150, 1156 (1993). Both restitution and quantum meruit are remedies or measures of damages for an unjust enrichment cause of action. *Storms v. Bergsieker*, 254 Mont. 130, 835 P.2d 738, 740–41 (1992); *see also Buday v. Phillips*, 2000 WL 366509, *2 (Mont.2000) (unpublished).

Where a plaintiff has a plain, speedy, and adequate remedy at law, he cannot bring a claim in equity. *Bullard v. Zimmerman*, 82 Mont. 434, 268 P. 512, 517 (1928). A legal remedy is adequate and complete if it is "as complete and efficacious as that given by equity." *Id.* at 518 (quotation omitted). It is a question for the court whether the legal remedy is adequate "and where there is a doubt as to its adequacy such doubt should be resolved in favor of the equitable jurisdiction." *Id.* (quotation omitted).

Plaintiff's Complaint asserts claims under statutory provisions for payment of wages and failure to pay wages upon separation. Mont.Code Ann. § 39–3–204, § 39–3–205. For both provisions, an employee may sue to recover the unpaid wages plus reasonable costs and attorney's fees, along with a penalty fee of up to 110% of the unpaid wages. Mont.Code Ann. § 39–3–206, § 39–3–207, § 39–3–214. The penalty provision does not depend on the employer's intent.

Montana has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether the statutory provisions which contain a 110% penalty provision would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing. However, the liquidated damages penalty applies regardless of an employer's intent and thus may not provide a full remedy to address Defendants' allegedly intentional misconduct. Further, Montana has stated the legal remedy must be as complete as the equitable remedy. Consequently, the statutory penalty may not afford as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count five of Plaintiff Cole's Complaint.

### D. *McFarlin v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00228 (**Count Three**)—Alaska

Under Alaska law, unjust enrichment is not in and of itself a theory of recovery but is a prerequisite to recover restitution, which is a remedy for other causes of action, such as a claim on a quasi-contract theory. *Alaska Sales & Serv., Inc. v. Millet,* 735 P.2d 743, 746 (Alaska 1987). Alaska recognizes "quasi-contract" theories as "judicially-created obligations to do justice." *Reeves v. Alyeska Pipeline Serv. Co.,* 926 P.2d 1130, 1143 (Alaska 1996) (quotation omitted). The elements of quasi-contract are: "1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof." *Alaska Sales & Serv., Inc.,* 735 P.2d at 746. Alaska treats unjust enrichment and quantum meruit claims as essentially the same. *Bennett v. Artus,* 20 P.3d 560, 563 (Alaska 2001).

Unjust enrichment is an equitable doctrine. *State, Dep't of Revenue, Child Support Enforcement Div. v. Wetherelt,* 931 P.2d 383, 390 n. 11 (Alaska 1997). To assert an equity claim, the plaintiff must show either there is no remedy at law or no legal remedy is adequate. *Knaebel v. Heiner,* 663 P.2d 551, 553 (Alaska 1983). Alaska has not precisely defined what makes a legal remedy "adequate," but it has suggested certain situations where damages would be inadequate. *Id.* For example, damages may be inadequate when the plaintiff has been deprived of a unique and irreplaceable item, when a legal remedy would require the plaintiff to bring more than one lawsuit, when the defendant is insolvent, or when the amount of damages is highly speculative. *Id.* However, these are not the only situations in which a legal remedy might be inadequate. *Id.* at 553 n. 1.

Plaintiff's Amended Complaint asserts claims for wage and hour statutory violations as well as breach of contract. Thus, Plaintiff's Complaint establishes Plaintiff has a legal remedy. Plaintiff's statutory claim is based on Alaska wage and hour statutes, which specifically provide a cause of action for an aggrieved employee who may recover both the unpaid wages and an equal amount as liquidated damages, plus costs and attorney's fees. Alaska Stat. § 23.10.110. As for breach of contract, Alaska does not permit punitive damages for breach of contract unless the conduct constituting the breach is also a tort for which the plaintiff may recover punitive damages. *Reust v. Alaska Petroleum Contractors, Inc.,* 127 P.3d 807, 821 (Alaska 2005).

Alaska has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether the statutory provisions which contain a liquidated damages provision in the amount of the unpaid wages would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing. However, the liquidated damages penalty applies regardless of an employer's intent and thus may not provide a full remedy to address Defendants' allegedly intentional misconduct. Further, Alaska has indicated its quasi-contract theories are aimed at "doing justice." Consequently, the statutory provisions' failure to address conscious wrongdoing may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court

therefore will deny Defendants' motion to dismiss count three of Plaintiff McFarlin's Complaint.

### E. *Poha v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00230 (Count Eight)—Hawaii

 Under Hawaii law, unjust enrichment consists of the defendant receiving a benefit, the retention of which would be unjust. *Durette v. Aloha Plastic Recycling, Inc.,* 105 Hawai'i 490, 100 P.3d 60, 72–73 (H2004). The remedy for unjust enrichment is restitution. *Id.* In determining whether restitution is appropriate, Hawaii courts look to restitution's underlying policy of preventing injustice. *Id.* Along these lines, Hawaii has indicated the law should deal severely with a conscious wrongdoer, "and he may not make a profit and is responsible for all losses arising out of his act," even if disgorgement of profits puts the plaintiff in a better position than if the defendant had not wronged the plaintiff. *Peine v. Murphy,* 46 Haw. 233, 377 P.2d 708, 714 (1962). Hawaii recognizes the general rule that a court of equity will not exercise jurisdiction when the party has an adequate remedy at law. *Thayer v. Lidgate,* 14 Haw. 544, 1902 WL 1437, *3 (Hawaii Terr.1902).

Plaintiffs allege statutory violations under Hawaii's wage and hour statutes which provide a civil remedy to employees to recover the amount of unpaid wages, "and in the case of wilful violation in an additional equal amount as liquidated damages." Haw.Rev.Stat. Ann. § 387–12. Hawaii has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether the statutory provisions which contain a liquidated damages provision for wilful violations would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing. However, under Hawaii law, "[a] statutory remedy is, as a rule, merely cumulative and does not abolish an existing common law remedy unless so declared in express terms or by necessary implication." *Watson v. Brown,* 67 Haw. 252, 686 P.2d 12, 15 (1984). The statute does not expressly indicate it is intended to replace common law rights or remedies. The statutory scheme also does not abolish common law remedies through necessary implication. The legislative history does not show an intent to preclude common law remedies. The liquidated damages penalty was added to make an employer liable to pay liquidated damages "only if such failure shall be wilful." Haw. Sen. J., Act 15, SB 39 at 251 (23rd Leg. of Terr. of Haw.1945); *see also* Haw. Sen. J., Act 66, SB 30 at 150 (20th Leg. of Terr. of Haw.1941). Thus, the provision providing a penalty for wilful violations was intended to ensure negligent employers were not penalized and to treat more harshly wilful violators. Hawaii expressed no intent to limit employees' remedies to the statutory penalties.

Further, Hawaii case law contains strong language about deterring intentional wrongdoers and permitting disgorgement as a remedy as part of Hawaii's overall unjust enrichment policy of doing justice. Accordingly, if paying an equal amount of the unpaid wages in liquidated damages would not sufficiently deter or do justice in a particular case, it is arguable Hawaii would permit an unjust enrichment claim even though the plaintiff has a legal remedy. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part, the Court will not dismiss Plaintiff's unjust enrichment claim, at least at this stage of the proceedings, without further inquiry into whether, based on the facts at issue, the wage and hour statute provides a complete, adequate remedy at law to deter Defendants from conscious wrongdoing. The Court therefore will deny Defendants' motion to dismiss count eight of Plaintiff Poha's Complaint.

## F. *Woods v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00436 (Count Six)— Maine

 Maine law makes a specific distinction between quantum meruit and unjust enrichment. Quantum meruit involves recovery for services or materials provided under an implied contract. *Paffhausen v. Balano*, 708 A.2d 269, 271 (Me. 1998). To establish quantum meruit, the plaintiff must establish that: (1) the plaintiff rendered services to the defendant; (2) with the defendant's knowledge and consent; and (3) under circumstances that make it reasonable for the plaintiff to expect payment. *Id.*

 Unjust enrichment involves recovery "for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay, and the damages analysis is based on principles of equity, not contract." *Id.* (quotation omitted). "Unjust enrichment applies only in the absence of any quasi-contractual relationship." *Danforth v. Ruotolo*, 650 A.2d 1334, 1335 n. 2 (Me. 1994). To establish a claim for unjust enrichment, the plaintiff must show: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated or knew of the benefit; and (3) the defendant accepted or retained the benefit in circumstances that make it inequitable for the defendant to retain the benefit without paying for the value of the benefit conferred. *Id.* Under Maine law, unjust enrichment is equitable in nature, but quantum meruit is an action at law. *Cummings v. Bean*, 853 A.2d 221, 224 (Me.2004).

Plaintiff has asserted both unjust enrichment and quantum meruit. Defendants' argument that Plaintiff Woods' quantum meruit claim must be dismissed because an adequate remedy at law exists does not apply because under Maine law this is a legal, not equitable, cause of action. Under Maine law, unjust enrichment and quantum meruit are mutually exclusive because quantum meruit involves an implied contractual relationship and unjust enrichment applies only in the absence of a contractual relationship. Thus, Maine would not allow Plaintiff to pursue both of these claims. However, as discussed above, Plaintiff may plead and maintain alternative causes of action.

With respect to whether Plaintiff has an adequate remedy at law, Plaintiff brings suit under various Maine wage and hour statutes which provide as a remedy recovery of the unpaid wages plus an equal, or twice an equal, amount in liquidated damages, as well as costs of suit. Me Rev. Stat. Ann. § 670, § 626–A. Maine has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether the statutory provisions which contain a liquidated damages provision in the amount of twice the unpaid wages would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing. However, the liquidated damages penalty applies regardless of an employer's intent and thus may not provide a full remedy to address Defendants' allegedly intentional misconduct. Further, Maine has indicated unjust enrichment is based on fairness and justice. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count six of Plaintiff Woods' Complaint.

### G. Curless v. Wal–Mart Stores, Inc., et al., 2:06–CV–00440 (Count Four)—Wyoming

To establish unjust enrichment/quantum meruit, the plaintiff must show: 1) he rendered valuable services to the defendant, 2) which defendant accepted, used and enjoyed, 3) under such circumstances which reasonably notified the defendant that the plaintiff expected to be paid, and 4) without such payment, the defendant would be unjustly enriched. *Silver Dollar Motel, Inc. v. Taylor Elec. Co.*, 761 P.2d 1006, 1008 (Wyo.1988); *see also Bowles v. Sunrise Home Ctr., Inc.*, 847 P.2d 1002, 1004 (Wyo.1993). "Unjust enrichment can occur when a defendant uses something belonging to the Plaintiff in such a way as to effectuate some kind of savings which results in or amounts to a business profit." *Cross v. Berg Lumber Co.*, 7 P.3d 922, 936–37 (Wyo.2000) (quotation omitted).

Unjust enrichment is related to restitution's core principle that a person who has been unjustly enriched at the expense of another is required to make restitution to the other. *Rocky Mountain Turbines, Inc. v. 660 Syndicate, Inc.*, 623 P.2d 758, 763 (Wyo.1981). Restitutionary remedies include compelling the conscious wrongdoer to disgorge his ill-gotten gains. *Cross*, 7 P.3d at 935. "Disgorgement is designed to deprive the wrongdoer of all gains flowing from the wrong rather than to compensate the victim of the fraud." *Id.* at 935–36 (quotation omitted). "Where a wrongdoer is shown to have been a conscious, deliberate misappropriator of another's commercial values, gross profits are recoverable through a restitutionary remedy." *Id.* at 936 (quotation omitted).

Plaintiff asserts claims under Wyoming's minimum wage laws and hour statutes, thus establishing he has a remedy at law. *See* Wyo. Stat. Ann. § 27–4–104; § 27–4–204. As to adequacy of that remedy, the statutes permit suit for recovery of wages plus interest and costs of suit. *See id.* The statutes do not contain a penalty provision for wilful violations.

Wyoming has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether its statutory provisions would constitute an adequate legal remedy given Plaintiff's allegations of conscious wrongdoing. However, the employee may recover costs of suit regardless of an employer's intent. Further, Wyoming has indicated a defendant can become unjustly enriched by using something of the plaintiff's to increase the defendant's profits and a restitutionary remedy may compel a conscious wrongdoer to disgorge all gains or profits in some circumstances. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count four of Plaintiff Curless' Complaint.

### H. Stafford v. Wal–Mart Stores, Inc., et al., 2:06–CV–00438 (Count Four)—Nebraska

Nebraska treats unjust enrichment, restitution, and quantum meruit as essentially the same under the doctrine of quasi-contracts. *Prof'l Recruiters, Inc. v. Oliver*, 235 Neb. 508, 456 N.W.2d 103, 106 (1990). Quantum meruit "is a contract implied in law theory of recovery based on the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another." *Tracy v. Tracy*, 7 Neb.App. 143, 581 N.W.2d 96, 101 (1998). Where the defendant has received

and retained a benefit under circumstances that it would be inequitable and unconscionable for the defendant to retain the benefit without paying for it, the law requires the defendant to pay the reasonable value of the services. *Id.* "Unjust enrichment requires restitution ... which measures the remedy by the gain obtained by the defendant, and seeks disgorgement of that gain." *Trieweiler v. Sears,* 268 Neb. 952, 689 N.W.2d 807, 834 (2004) (internal citation omitted).

The doctrine of unjust enrichment applies only in the absence of an agreement between the parties. *Washa v. Miller,* 249 Neb. 941, 546 N.W.2d 813, 819 (1996). However, a plaintiff is permitted to plead both express contract and quasi-contract in the same complaint. *Collection Bureau of Grand Island, Inc. v. Fry,* 9 Neb.App. 277, 610 N.W.2d 442, 447 (2000).

Equitable remedies generally are not permitted where the plaintiff has an adequate remedy at law. *Pilot Inv. Group Ltd. v. Hofarth,* 250 Neb. 475, 550 N.W.2d 27, 33 (1996) (equitable remedy not available where statute provides adequate remedy); *Ganser v. Lancaster County,* 215 Neb. 313, 338 N.W.2d 609, 611–12 (1983). A remedy at law is adequate if it is "plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." *Ganser,* 338 N.W.2d at 611 (quotation omitted).

Nebraska has stated unjust enrichment is tried in equity. *Schmeckpeper v. Koertje,* 222 Neb. 800, 388 N.W.2d 51, 53 (1986). However, Nebraska also has stated that "notwithstanding the terminology that quantum meruit and unjust enrichment are equitable doctrines, the mere fact that recovery is sought under them does not change a suit for money into an action in equity. That is not to say that in a given case, the doctrines might not be applied in an equity case, but only that

their application does not make a case one in equity." *Collection Bureau of Grand Island, Inc.,* 610 N.W.2d at 448.

Plaintiff has alleged both breach of contract and some state wage and hour statutory violations. Plaintiff is entitled to plead both theories in the alternative under both the Federal Rules of Civil Procedure and Nebraska law. As to whether Plaintiff has an adequate remedy at law precluding an equitable remedy, the Nebraska wage and hour statutory provisions permit an employee to sue for the unpaid wages plus reasonable costs of suit, but contain no liquidated damages or other penalty. Neb.Rev.Stat. § 48–1206, § 48–1231.

Nebraska has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether its statutory provisions or a breach of contract action would constitute an adequate legal remedy given Plaintiff's allegations of intentional wrongdoing. However, the employee may recover costs of suit under the statute regardless of an employer's intent. Further, Nebraska has indicated disgorgement of a defendant's gains is a proper measure of unjust enrichment. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Moreover, under Nebraska law, where an unjust enrichment claim seeks money, it is not necessarily equitable in nature, and thus Plaintiff's unjust enrichment claim is a remedy at law. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part, allegations which the Court must accept as true in reviewing a motion to dismiss, and because Plaintiffs seek money damages, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count four of Plaintiff Hall's Complaint.

**I.** *Hall v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–01099 (Count Three)—Nevada

■■■■ Under Nevada law, unjust enrichment is "the unjust retention . . . of money or property of another against the fundamental principles of justice or equity and good conscience." *Asphalt Prods. Corp. v. All Star Ready Mix, Inc.,* 111 Nev. 799, 898 P.2d 699, 701 (1995) (quotations omitted). As for quantum meruit, or quasi contract, a plaintiff must show she conferred a benefit on the defendant, and the defendant appreciated, accepted, and retained the benefit under circumstances such that it would be inequitable for him to retain the benefit without paying for it. *Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12, 1975,* 113 Nev. 747, 942 P.2d 182, 187 (1997). Nevada recognizes the general rule that equity remedies are not available where the plaintiff has a full and adequate remedy at law. *State v. Second Judicial Dist. Court in & for Washoe County,* 49 Nev. 145, 241 P. 317, 322 (1925).

Plaintiff alleges violations of Nevada's minimum wage statute, which permits an employee to sue for unpaid wages to recover unpaid wages. Nev.Rev.Stat. § 608.260. The statutory provisions make no reference to liquidated damages or other penalties for wilful violations.

Nevada has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether its statutory provisions would constitute an adequate legal remedy given Plaintiff's allegations of intentional wrongdoing. However, the statutory provisions do not include any penalty provisions dependent on an employer's intent. Further, Nevada has indicated unjust enrichment is based on principles of justice and good conscience. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because

Plaintiffs have alleged intentional wrongdoing on Defendants' part and the Court must accept those allegations as true in reviewing a motion to dismiss, the Court will not dismiss Plaintiff's unjust ·enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count four of Plaintiff Stafford's Complaint.

**J.** *Jackson (Reginald) v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00231 (Count Six)—Idaho

■■■ Idaho law treats quantum meruit and unjust enrichment as equitable remedies providing for different measures of recovery. *Great Plains Equip., Inc. v. N.W. Pipeline Corp.,* 132 Idaho 754, 979 P.2d 627, 640 (1999). Quantum meruit is based on an implied promise to pay and the recovery therefore is the reasonable value of the services rendered or the materials provided. *Id.* Unjust enrichment is based on the defendant receiving a benefit from the plaintiff that would be inequitable for the defendant to retain without compensating the plaintiff for the value thereof. *Id.* The measure of damages for unjust enrichment is "the value of the benefit bestowed upon the defendant which, in equity, would be unjust to retain without recompense to the plaintiff," and may include disgorging all unjustly obtained benefits. *Holladay v. Lindsay,* 143 Idaho 767, 152 P.3d 638, 641 (2006) (quotation omitted). Where adequate legal remedies are available, Idaho declines to apply the equitable doctrine of unjust enrichment. *Aberdeen–Springfield Canal Co. v. Peiper,* 133 Idaho 82, 982 P.2d 917, 923 (1999). A plaintiff may not bring an equitable claim if it has an adequate remedy at law. *Iron Eagle Dev., LLC v. Quality Design Sys., Inc.,* 138 Idaho 487, 65 P.3d 509, 514 (2003).

Plaintiff brings claims under Idaho's statutes regarding wages, which permit an employee to recover unpaid wages, costs, and three times the unpaid wages or penalties provided in Idaho Code Annotated § 45–607, whichever is greater. Idaho Code Ann. § 45–615, § 44–1508. Section 45–607 provides as a penalty for failure to pay wages that the employee's wages continue at the same rate of pay for fifteen days, not to exceed $750.

Idaho has not addressed a situation similar to the allegations in Plaintiff's Complaint, and thus has not expressed whether its statutory provisions would constitute an adequate legal remedy given Plaintiff's allegations of intentional wrongdoing. However, the statutory penalty applies regardless of an employer's intent. Further, Idaho has indicated disgorgement of a defendant's gains is a proper measure of unjust enrichment. Consequently, the statutory provisions may not provide as complete a remedy as unjust enrichment. Because Plaintiffs have alleged intentional wrongdoing on Defendants' part, the Court will not dismiss Plaintiff's unjust enrichment claim at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count six of Plaintiff Jackson's Complaint.

## V. STATUTORY CLAIMS

### A. *Williams v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00439 (Counts Two, Three, Four)—Utah

Defendants move to dismiss count one of Plaintiff's Complaint because Utah's Minimum Wage Act does not apply to employees covered by the Fair Labor Standards Act ("FLSA"). Defendants also move to dismiss counts two, three, and four because Utah's Payment of Wages Act ("UPWA") does not provide for a private right of action. Further, Defendants assert counts two, three, and four are subject to dismissal for the additional reason

that the statutory provisions do not apply factually to Plaintiff's allegations. Plaintiffs respond that the FLSA does not preempt actions under Utah state law to enforce payment of the minimum wage. Further, Plaintiffs argue the UPWA provides a private right of action for employees and Plaintiff states cognizable claims in counts two, three, and four.

### 1. *Count One–Minimum Wage Act*

 The Utah Minimum Wage Act sets a minimum wage for employees within the state. Utah Code Ann. § 34–40–103. An aggrieved employee may bring a civil suit "to enforce his rights under this chapter," and may obtain injunctive relief, the difference between the wage paid and the minimum wage, interest, and costs of suit. Utah Code Ann. § 34–40–205(1)–(2). Pursuant to Utah's Minimum Wage Act, the state law minimum wage does not apply to "any employee who is entitled to a minimum wage as provided in 29 U.S.C. Sec. 201 et seq., the Fair Labor Standards Act of 1938...." Utah Code Ann. § 34–40–104(1)(a).

The FLSA sets a minimum wage for an employee "engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce...." 29 U.S.C. § 206(a), § 207(a) (same with application to overtime hours). The FLSA defines "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that has employees engaged in commerce or in the production of goods for commerce and has annual gross volume of sales made not less than $500,000. 29 U.S.C. § 203(s)(1)(A). Commerce means trade among the several States. 29 U.S.C. § 203(b).

Plaintiff's Complaint alleges Defendants transact millions of dollars within Utah

and that Defendants' alleged wrongful conduct "has been widespread, recurring and uniform at its stores across the nation." (2:06–CV–00439, Compl. [Doc. # 1] at ¶¶ 9–10, 16–17.) Because Defendants are enterprises engaged in commerce or in the production of goods for commerce, Plaintiff is covered by the FLSA. Because Plaintiff is covered by the FLSA, Utah's Minimum Wage Act does not apply.

Plaintiff argues the FLSA does not "preempt" Utah's Minimum Wage Act, but this is not an issue of a federal statute preempting a state law. Rather, as a matter of Utah state law, the Minimum Wage Act does not apply where the FLSA applies. Further, Plaintiff argues that although the FLSA sets the minimum wage, an employee may enforce those rights under the UPWA. However, the Minimum Wage Act has its own enforcement mechanism through which employees can enforce their rights under the chapter. The UPWA is not within the same chapter as the Minimum Wage Act, and each Act has its own enforcement provisions. *Compare* Utah Code Ann. § 34–40–205(1)–(2) *with* Utah Code Ann. § 34–28–5. Because Utah's Minimum Wage Act does not apply to Plaintiff, Plaintiff has no rights to enforce under the relevant chapter. The Court will grant Defendants' motion and will dismiss count one of Plaintiff Williams' Complaint.

### 2. Counts Two, Three, and Four

Plaintiff brings suit under Utah Code Annotated § 34–28–3 (counts two and three) and § 34–28–5 (count four). The UPWA does not explicitly provide a cause of action for claims under § 34–28–3, but does provide an explicit cause of action under § 34–28–5. Pursuant to § 34–28–5(1)(a), when an employer terminates an employee, the employee's unpaid wages become due immediately, and the employer must pay the wages to the employee within twenty-four hours of separation. If the employer fails to do so within twenty-four hours of written demand, the employee's wages continue to accrue from the date of demand until paid, not to exceed sixty days. Utah Code Ann. § 34–28–5(b)(i). Additionally, the employee may recover this penalty in a civil action so long as the employee commences suit within sixty days of separation. Utah Code Ann. § 34–28–5(b)(ii). However, an employee who does not make a written demand for payment is not entitled to the penalty. Utah Code Ann. § 34–28–5(b)(iii).

To determine whether a statute implicitly provides a private right of action, Utah examines:

(1) whether the plaintiff is a member of a class for whose special benefit the statute was enacted; (2) whether [the legislature] intended to create or deny a private remedy; (3) whether a private remedy would be consistent with the Statute's underlying purposes; and (4) the extent to which the cause of action is traditionally relegated to state law.

*Machan v. UNUM Life Ins. Co. of Am.,* 116 P.3d 342, 347–48 (Utah 2005) (quotation omitted). Generally, Utah is reluctant to recognize an implied right of action in the absence of statutory language expressly indicating the legislature so intended. *Id.* Utah begins with the statute's plain language to determine legislative intent. *Id.* at 348.

Utah has not addressed whether a private right of action exists under § 34–28–3. The only actions Utah has examined under the UPWA have been brought under § 34–28–5, which provides for a private right of action. *See Smith v. Batchelor,* 832 P.2d 467 (Utah 1992) (claim brought under § 34–28–5 for unpaid back wages and penalty); *Zoll & Branch, P.C. v. Asay,* 932 P.2d 592 (Utah 1997) (same). Beginning with the statute's plain language, § 34–28–3 does not indicate an in-

tent to provide for a private right of action. Further, the inclusion of a private right of action in § 34–28–5 suggests the Utah legislature intended a private right of action only in limited circumstances. Otherwise, the aggrieved employee's remedy is to file a complaint with the Division of Antidiscrimination and Labor to investigate and pursue. *See* Utah Code Ann. § 34–28–9. Because no private right of action for § 34–28–3 exists, the Court will grant Defendants' motion to dismiss with prejudice counts two and three of Plaintiff Williams' Complaint.

As for count four, Plaintiff brings this claim under § 34–28–5, and thus a private right of action exists. However, Plaintiff has not pled the necessary elements for this claim. Plaintiff does not allege Defendants terminated her employment, that she made written demand for her pay within twenty-four hours of separation, and that Defendants failed to meet this demand. Accordingly, the Court will dismiss count four as well, but without prejudice for Plaintiff Williams' to file an amended complaint asserting these allegations if appropriate. Plaintiff Williams must file an amended complaint within thirty days of the date of this Order if she intends to re-assert a claim under § 34–28–5.

### B. *McFarlin v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00228 (Count One)—Alaska

Defendants move to dismiss part of count one of Plaintiff's Amended Complaint which alleges Defendants failed to keep accurate payroll records and falsified such records in violation of Alaska Statutes § 23.10.100, § 23.10.135, and § 23.05.080. Defendants assert no private right of action exists to enforce the record keeping provision. At the hearing on this matter, Plaintiffs indicated they did not intend to assert a separate claim based on the record keeping provisions, but they requested the Court not strike the allegations because Plaintiffs seek to take advantage of Alaska case law that shifts the burden to the employer to prove it paid all wages or overtime pay due where an employer fails to keep adequate records. With this understanding of Plaintiffs' position, Defendants indicated they would withdraw their motion to dismiss count one. The Court therefore will deny Defendants' motion to dismiss count one of Plaintiff McFarlin's Complaint as moot.

### C. *Poha v. Wal–Mart Stores, Inc., et al.,* 2:06–CV–00230 (Counts two, three, four, five and nine)—Hawaii

Defendants move to dismiss counts two, three, four, five, and nine of Plaintiffs' Amended Complaint. Defendants argue the FLSA bars count two and no private right of action exists for counts three, four, five and nine. Plaintiffs respond that under Hawaii law, where state law gives greater benefits to the employee, the FLSA does not apply, and Hawaii's minimum wage law sets a higher minimum wage than the FLSA does. Plaintiffs also argue their record keeping claims should not be dismissed because they can use Defendants' alleged failure to keep accurate records in pursuit of their other claims.

#### 1. *Count Two*

Count two of Plaintiffs' Amended Complaint alleges a violation of Hawaii Revised Statute § 387–3, Hawaii's overtime statute. Section 387–3 applies to an "employee." Haw.Rev.Stat. § 387–3(a). Section 387–1 defines "employee" to exclude an individual employed:

> In any capacity if by reason of the employee's employment in such capacity and during the term thereof the mini-

mum wage which may be paid the employee or maximum hours which the employee may work during any workweek without the payment of overtime, are prescribed by the federal Fair Labor Standards Act of 1938, as amended, or as the same may be further amended from time to time; provided that if the minimum wage which may be paid the employee under the Fair Labor Standards Act for any workweek is less than the minimum wage prescribed by section 387–2, then section 387–2 shall apply in respect to the employees for such workweek; provided further that if the maximum workweek established for the employee under the Fair Labor Standards Act for the purposes of overtime compensation is higher than the maximum workweek established under section 387–3, then section 387–3 shall apply in respect to such employee for such workweek. . . .

Haw.Rev.Stat. § 387–1; *see also* 29 U.S.C. § 218(a) (stating that FLSA does not excuse noncompliance with state law setting higher minimum wage or lower maximum work week). Accordingly, unless the FLSA sets a longer workweek than Hawaii law, § 387–3 does not apply to an employee otherwise covered by the FLSA. Section 387–3 provides for a maximum work week of forty hours, as does the FLSA. Haw.Rev.Stat. § 387–3(a); 29 U.S.C. § 207(a)(1). Because § 387–3 does not provide a shorter maximum work week, the FLSA applies and § 387–3 does not. Accordingly, the Court will grant Defendants' motion and dismiss count two of Plaintiff Poha's Amended Complaint.

### 2. *Counts three, four, five, and nine*

Defendants move to dismiss these counts, asserting no private right of action exists for these counts. Plaintiffs respond that the Court should not strike the allegations from the Complaint because Plaintiffs can use the inaccurate record keeping to establish their other claims.

Count three alleges a violation of Hawaii Revised Statute § 387–6, a record keeping provision. This section does not make explicit reference to a private right of action. The statute refers to the employer being required to cooperate with any investigation by the director of labor and industrial relations, but makes no mention of civil enforcement by the employee. Section 387–12 specifically provides for private enforcement actions for violations of § 387–2 (minimum wage) and § 387–3 (maximum hours). The fact that Hawaii made specific provisions for private enforcement of the minimum wage and maximum hours violations but not for record keeping violations under the same chapter suggests Hawaii did not intend for an implied right of action under § 387–6. Accordingly, the Court will grant Defendants' motion to dismiss count three of Plaintiff Poha's Amended Complaint.

Counts four and five of Plaintiff's Complaint assert claims under Chapter 388. Count four alleges a violation of Hawaii Revised Statute § 388–2, which requires an employer to pay his employees at least twice a month. Count five alleges a violation of § 388–7, which sets forth certain notification and record keeping requirements. Neither § 388–2 nor § 388–7 provide an explicit private cause of action. Section 388–9 grants Chapter 388 enforcement powers to the director of labor and industrial relations. Section 388–10 provides a cause of action for employees to bring a civil action to collect the unpaid wages plus an amount equal to the unpaid wages plus interest. The fact that Hawaii made specific provisions for private enforcement for the failure to pay wages but not for record keeping violations within the same chapter suggests Hawaii did not intend for an implied right of action under

§ 388–2 or § 388–7. Rather, Hawaii vests enforcement authority for these provisions in the director of labor and industrial relations. Accordingly, the Court will grant Defendants' motion to dismiss counts four and five of Plaintiff Poha's Amended Complaint.

Although denominated as a separate claim, count nine is not a separate cause of action but a request for injunctive relief. The Court will not foreclose the remedy of injunctive relief at this stage of the proceedings. The Court therefore will deny Defendants' motion to dismiss count nine with the understanding that count nine is not an independent ground for relief.

### D. *Woods v. Wal–Mart Stores, Inc. et al.,* 2:06–CV–00436 (Counts Two, Three, and Four)—Maine

Defendants move to dismiss counts two, three, and four of Plaintiff Woods' Complaint, arguing that factually these statutory provisions do not apply to Plaintiff's allegations and Plaintiff is attempting to use these statutory provisions to obtain a penalty greater than permitted under applicable law. Plaintiff responds that his allegations fall within the statutory language. Although this motion originally was directed at Plaintiff Woods' original Complaint, the same issues arise in the Amended Complaint.

#### 1. *Count two*

Count two of the Amended Complaint alleges Defendants violated 26 Maine Revised Statutes Annotated § 621–A by failing to pay wages as they became due and payable. Section § 621–A provides that an employer must pay each employee "in full all wages earned" at regular intervals not to exceed sixteen days. Pursuant to § 626–A, an employer is liable to the employee for the amount of unpaid wages, plus interest, costs of suit, and a liquidated damages penalty of twice the unpaid wages due. Maine has inter-

preted a predecessor to § 621–A to permit an employee to sue for unpaid wages "only if: (1) the employee has been discharged, subsequently demands to be paid, and the employer refuses to do so, see 26 M.R.S.A. § 626; or (2) when that employer has failed to pay a current employee in full, if the employer fails to pay the amount withheld by that employee's next regularly scheduled payday, see 26 M.R.S.A. §§ 621, 626–A." *In re Wage Payment Litig.,* 759 A.2d 217, 223 (Me.2000).

In *In re Wage Payment Litigation,* the plaintiffs brought suit for wages that were late but which the employer ultimately paid. *Id.* at 222–23. The Court ruled the plaintiffs failed to state a claim for "unpaid wages" because § 621 required a claim for unpaid wages, not simply late wages, where the statute permitted an employer to make a catch up payment on the next regularly scheduled payday. *Id.* at 223. Only if the employer failed to pay on the regular payday or the following payday could the employee bring suit for "unpaid" wages. *Id.* at 223–24. Here, Plaintiff has asserted the regularly scheduled pay periods came and went without payment, and the wages remain unpaid. Consequently, Plaintiff's allegations fall within § 621–A and are not subject to dismissal.

Defendants also cite *In re Wage Payment Litigation* and *Avery v. Kennebec Millwork, Inc.,* 861 A.2d 634, 636–37 (Me. 2004) for the propositions that the minimum wage statute has no time-of-payment language and the penalties associated with a claim for violating the minimum wage law are different than violations of the time-of-payment provisions. In both *In re Wage Payment* and *Avery,* the employee made a specific claim under Maine's minimum wage laws. Neither case is relevant to Plaintiff's claim under § 621–A, which is different than a minimum wage claim because it asserts Defendants did not timely pay wages due rather than that Defen-

dants timely paid less than the amount of hourly wage due. Because the minimum wage laws do not control an action brought under the time of payment provisions, the Court will deny Defendants' motion to dismiss count two of Plaintiff Woods' Amended Complaint.

### 2. Count three

In count three, Plaintiff alleges Defendants violated 26 Maine Revised Statutes Annotated § 622 by failing to keep a record showing the date and amount paid, daily record of time worked. As a remedy for these violations, Plaintiff seeks unpaid wages and liquidated damages. Defendants move to dismiss this claim, asserting § 622 is a record keeping requirement that does not provide a cause of action for unpaid wages and liquidated damages.

Section 622 requires employers to keep a "true record" showing the date and amount paid to each employee and daily records of time each employee worked. It does not provide a specific cause of action for alteration of records or failure to keep an accurate record. Section 626–A provides that an employer is liable to an employee for the amount of unpaid wages, plus interest, costs of suit, and a liquidated damages penalty. Section 626–A does not provide an independent basis for an employee to recover under § 622 for record keeping violations. Rather, the employee is limited to the remedy of pursuing any unpaid wages or benefits. Pursuant to § 626–A, only the Maine Department of Labor may pursue civil forfeiture penalties against an employer for violating § 622. *See In re Wage Payment Litig.*, 759 A.2d at 221–222. The Court therefore will grant Defendants' motion to dismiss count

three of Plaintiff Woods' Amended Complaint.

### 3. Count four

Count four of the Amended Complaint alleges Defendants failed to pay wages due upon separation in violation of 26 Maine Revised Statutes Annotated § 626. Defendants move to dismiss this claim, arguing it alleges a claim under the minimum wage act, not § 626. Plaintiffs respond they have asserted a claim under the plain language of section § 626.

Section 626 provides that upon an employee leaving employment, the employer must pay the employee in full within a reasonable time after demand. Plaintiff alleges he demanded payment and Defendants failed to pay in full. However, the Amended Complaint does not allege Plaintiff separated from employment with Defendants. Without this allegation, Plaintiff fails to state a claim under § 626. Although the Amended Complaint suggests Plaintiff Woods no longer works for Defendants, it contains no express allegation to that effect. The Court therefore will grant Defendants' motion to dismiss this claim with leave to amend to include an allegation of separation from employment. Plaintiff Woods must file a second amended complaint within thirty days of the date of this Order if he wishes to pursue a claim under § 626.[6]

### E. *Stafford v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00438 (Counts One through Four of the original Complaint)—Nebraska[7]

### 1. Count One

Count one of Plaintiff Stafford's Amended Complaint alleges Defendants violated

6. As for Defendants' argument that Plaintiff's claim under § 626 actually is a claim under the minimum wage laws, the fact that Plaintiff alleges a claim for minimum wage violations does not preclude Plaintiff from also making a claim under § 626.

7. Defendants moved to dismiss Plaintiff's original Complaint, and thus Defendants' mo-

Nebraska wage and hour statutes by failing to compensate properly for off-the-clock work, overtime, and other unrecorded hours employees worked. Defendants argue count one fails to state a claim with respect to overtime hours because the statute at issue applies only to a minimum wage, not to a maximum hour requirement. Defendants also argue Nebraska law requires the parties to have entered into a prior agreement to pay overtime wages, and Plaintiff has failed to plead such an agreement. Plaintiffs respond Nebraska does not have an overtime statute, but because Defendants are subject to the FLSA, the requirement to pay an increased rate for overtime necessarily is part of the employment agreement between Defendants and Plaintiff.

■■■ Nebraska Revised Statutes § 48–1201 et seq. contain no provision for maximum hours worked; rather, the provisions refer only to a minimum wage. Under Nebraska law, a plaintiff may bring a claim for overtime under the wages and hour statute only where the employer and employee previously agreed to overtime compensation. *Freeman v. Cent. States Health & Life Co. of Omaha*, 2 Neb. Ct. App. 803, 807 (Neb.Ct.App.1994). An employee may file an FLSA claim in a Nebraska state court, but he cannot use the Nebraska Wage Act to enforce rights he may possess under the FLSA. *Id.* at 808.

Plaintiff's Complaint does not allege Plaintiff and Defendants entered into a previous agreement for overtime compensation. Accordingly, Plaintiff fails to state a claim for overtime compensation under Nebraska's wage and hour statute. Although Plaintiff attempts to argue the FLSA is an implied term of the employment contract, Nebraska has rejected this view, requiring the employee to assert such a claim under the FLSA, not Nebraska's wage and hour statute. Accordingly, the Court will dismiss count one to the extent it relies on overtime compensation.

### 2. Count two

Count two of Plaintiff's Amended Complaint alleges Defendants failed to pay wages due upon employees' separation from Defendants. Defendants move to dismiss this claim, arguing the Amended Complaint contains no allegation Plaintiff was terminated or there was a failure to pay wages upon termination. Plaintiff failed to respond to this argument because Defendants moved to dismiss count two of the original Complaint, which was different than count two of the Amended Complaint. Plaintiffs' Opposition brief argued the legal issues involved in the original Complaint as if those claims were still alive, even though Plaintiffs filed their opposition to Defendants' motion to dismiss after Plaintiff Stafford filed her Amended Complaint. The Complaint contains no allegation Plaintiff Stafford was terminated. Accordingly, the Court will dismiss count two of Plaintiff Stafford's Amended Complaint, but with leave to amend to add allegations regarding separation from employment and failure to pay wages upon separation. Plaintiff Stafford must file a second amended complaint within thirty days of the date of this Order to pursue a claim based on failure to pay past wages due upon discharge under Nebraska Revised Statute § 48–1201 et seq.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or Motion for Judgment on the Pleadings With Respect to Plaintiffs' Claims for Conversion,

---

tion contains arguments pertaining to counts no longer existing in the Amended Complaint. The Court will deny as moot Defendants' mo-

tion to dismiss counts three and four of the original complaint as those claims do not exist in the Amended Complaint.

Unjust Enrichment, Statutory Wages, and Memorandum of Law in Support Thereof (Doc. # 57) is hereby GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that the following claims are hereby dismissed with prejudice:

- *Jackson (Dora) v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00229–PMP–PAL
 — count three (conversion)
- *Williams v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00439–PMP–PAL
 — count one (minimum wage act)
 — count two (Utah Code Annotated § 34–28–3)
 — count three (Utah Code Annotated § 34–28–3)
 — count five (conversion)
- *Cole v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00437–PMP–PAL
 — count four (conversion)
- *McFarlin v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00228–PMP–PAL
 — count two (conversion)
- *Poha v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00230–PMP–PAL
 — count two (Hawaii Revised Statute § 387–3)
 — count three(Hawaii Revised Statute § 387–6)
 — count four (Hawaii Revised Statute § 388–2)
 — count five (Hawaii Revised Statute § 388–7)
 — count seven (conversion)
- *Woods v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00436–PMP–PAL
 — count three (26 Maine Revised Statutes Annotated § 622)
 — count five (conversion)
- *Curless v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00440–PMP–PAL
 — count three (conversion)
- *Stafford v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00438–PMP–PAL
 — only that part of count one which relies on overtime allegations
 — count three (conversion)

IT IS FURTHER ORDERED that the following claims are hereby dismissed without prejudice:

- *Williams v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00439–PMP–PAL
 — count four (Utah Code Annotated § 34–28–5)
- *Woods v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00436–PMP–PAL
 — count four (26 Maine Revised Statutes Annotated § 626)
- *Stafford v. Wal–Mart Stores, Inc., et al.*, 2:06–CV–00438–PMP–PAL
 — count two (Nebraska Revised Statute § 48–1201, et seq.)

IT IS FURTHER ORDERED that Plaintiffs must file amended complaints re-pleading any claims dismissed without prejudice within thirty (30) days of the date of this Order.

IT IS FURTHER ORDERED that except as detailed above, Defendants' motion to dismiss is denied.

IT IS FURTHER ORDERED that Defendants shall file a response to Plaintiffs' Motion for Class Certification within thirty (30) days of the date of this Order per Defendants' Unopposed Motion For an Extension of Time to Respond to Plaintiffs' Motion for Class Certification (Doc. # 102).